IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SCOTT M. THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-08-575-D |
| | ) | |
| LARRY HILL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Mr. Scott Thornton is a pretrial detainee at the Oklahoma County Detention Center ("OCDC"), alleging:

- deprivation of due process and the right to petition for redress of grievances through the failure to respond to grievances and denial of forms;

- denial of due process and cruel and unusual punishment through a failure to provide protection;

- denial of court access because of inadequacies in library access, lack of research materials, limits on the amount of research materials, lack of photocopies, and restrictions on access to court-appointed counsel and the attorneys' correspondence;

- unconstitutional conditions of confinement through inadequate recreation, lack of cleaning supplies, moldy showers, inadequate diet, lack of fresh air, an inappropriate cell transfer, lack of "sight checks," inoperable medical emergency buttons, insufficient hygiene supplies, insufficient changes of clothes, disparaging remarks by officers, excessive prices for commissary items, and insufficient supplies of styrofoam cups;

- deprivation of personal property through the loss or withholding of a package and confiscation of pencils, erasers, headphones, and batteries;

- excessive force;

- deprivation of religious materials; and

- denial of due process in the disciplinary process.

Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at pp. 3-12, 15-17 (Oct. 15, 2008) ("Amended Complaint").

Asserting personal capacity and official capacity claims, Mr. Thornton has sued Larry Hill, Jack Herron, Bobby Carson, Scott Sedbrook, Captain Faulkner, Michael Thomas, Lieutenant Bradley, Lieutenant Finley, Lieutenant Hansen, Yogi Doroteo, Sergeant Garner, Brian Arrington, Corporal Ramsey, Corporal Whitenhorn, SDO Moore, SDO Gurley, Steven Chandler, Elsa Carrion, and Latisha Prince ("Individual OCDC Defendants"). *Id.* at pp. 1-2; *see also* Plaintiff's Response to "Defendant's" Motion to Dismiss/for Summary Judgement at pp. 1-2 (Feb. 2, 2009) ("Plaintiff's Response") (challenging the Individual OCDC Defendants' assertion that they had only been named in their individual capacities).[1]   The Plaintiff has also named the OCDC and Oklahoma County Sheriff John Whetsel in his official capacity.  Amended Complaint at pp. 1-2.[2]

---

[1]   When a *pro se* plaintiff does not say whether he is suing in the defendant's personal or official capacity, the Tenth Circuit Court of Appeals has regarded the claim to encompass both capacities.  *See*, *e.g.*, *Hull v. State of New Mexico Taxation and Revenue Department's Motor Vehicle Division*, 179 Fed. Appx. 445, 447 (10th Cir. Apr. 25, 2006) (unpublished op.); *Ortega v. Gonzales*, 17 F.3d 1437, 1994 WL 47162, Westlaw op. at 2 (10th Cir. Feb. 17, 1994) (unpublished op.).

[2]   After filing the amended complaint, Mr. Thornton obtained permission to substitute John Whetsel for the Oklahoma County Sheriff's Department.  *See* Order (Feb. 13, 2009).  The Plaintiff clarified that Mr. Whetsel was being sued only in his official capacity.  *See* Capacity of Defendant Whetsel (Feb. 11, 2009) (the Plaintiff's notification that "he seeks to name Sheriff John Whetsel in his 'official capacity,' and that capacity alone").

2

As a separate entity, OCDC is entitled to dismissal with prejudice because it is not a suable entity.

The Individual OCDC Defendants have moved for dismissal or summary judgment in their individual capacities on grounds of qualified immunity based on Mr. Thornton's inability to establish any constitutional violations. Defendants' Motion to Dismiss/for Summary Judgment (with Brief in Support) at pp. 2-15 (Dec. 15, 2008) ("OCDC Defendants' Dispositive Motion").

The Court should grant the motion to dismiss the personal capacity claims against Lieutenant Hansen, Corporal Whitenhorn, SDO Gurley, and Latisha Prince. They did not participate in the underlying events, and the Court should order dismissal without prejudice of the personal capacity claims against these individuals.

For the personal capacity claims against Larry Hill, Jack Herron, Bobby Carson, Scott Sedbrook, Captain Faulkner, Michael Thomas, Lieutenant Bradley, Lieutenant Finley, Yogi Doroteo, Sergeant Garner, Brian Arrington, Corporal Ramsey, SDO Moore, Steven Chandler, and Elsa Carrion, the Court should grant:

- dismissal without prejudice of the due process claims for deficiencies in the grievance process;

- dismissal without prejudice of the due process claims stemming from a failure to provide protection;

- dismissal with prejudice of the claims involving deprivation of personal property through the confiscation of pencils, erasers, headphones, and batteries; and

- dismissal with prejudice of the claims involving loss of the Plaintiff's package.

For these defendants, the dispositive motion should be rejected on the personal capacity claims involving:

- denial of access to the courts through lack of library access, lack of research materials, limits on the amounts of research materials, lack of photocopies, and restrictions on access to court-appointed counsel and attorney correspondence;

- deprivation of personal property through the withholding of the Plaintiff's package;

- deprivation of religious materials;

- improper cell transfer;

- lack of styrofoam cups; and

- excessive force.

The argument for dismissal by the Oklahoma County Sheriff's Office should be denied on grounds of mootness.

On screening, the Court should summarily dismiss without prejudice the personal capacity claims involving inadequate recreation, lack of cleaning supplies, moldy showers, inadequate diet, lack of fresh air, lack of sight checks, inoperable medical emergency buttons, insufficient hygiene supplies, insufficient changes of clothes, disparaging remarks, and excessive prices on commissary items by Sergeant Hill, Major Herron, Captain Carson, Captain Sedbrook, Captain Faulkner, Lieutenant Thomas, Lieutenant Bradley, Lieutenant Finley, Yogi Doroteo, Sergeant Garner, Brian Arrington, Corporal Ramsey, SDO Moore, Steven Chandler, and Elsa Carrion.

The Individual OCDC Defendants did not address the allegations concerning:

- liability in their official capacities; and

- liability in the personal capacities of Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion for inadequate administrative procedures in violation of the First Amendment, failure to supply protection in violation of the Eighth Amendment, and deprivation of due process in the disciplinary process.

These claims should survive after the Court's preliminary review of the amended complaint and consideration of the dispositive motion.

## STANDARDS FOR DISMISSAL AND SUMMARY JUDGMENT

The Court must consider whether the Plaintiff has stated a valid claim in the amended complaint. In part, this consideration is necessary because the Individual OCDC Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). Some of the claims were not addressed in the dispositive motion. Even for these causes of action, however, the Court must screen for failure to state a claim on which relief can be granted. *See* Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), 42 U.S.C. § 1997e(c)(1).[3]

---

[3] Screening is necessary under these statutes because:

- the Court has allowed Mr. Thornton to proceed *in forma pauperis*,

- the movants are governmental entities and governmental employees, and

- the claims involve prison conditions.

*See* Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), 42 U.S.C. § 1997e(c)(1); Order Granting Leave to Proceed *In Forma Pauperis* at p. 2 (July 18, 2008).

In determining whether dismissal is appropriate, the Court considers whether the Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The well-pleaded factual allegations in the amended complaint must be accepted as true and construed in the light most favorable to the Plaintiff. *See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). A *pro se* complaint like Mr. Thornton's must be broadly construed under this standard. *See Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

On their motion for summary judgment, the Defendants bear the burden. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002). Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits[4] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

## CONSIDERATION OF THE DISPOSITIVE MOTION

The dispositive motion should be granted in part and denied in part.

---

[4]     Because the amended complaint is verified, the document is treated as an affidavit. *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (*per curiam*).

I.     CLAIMS AGAINST THE OCDC AND THE OKLAHOMA COUNTY SHERIFF'S OFFICE

The OCDC and the Oklahoma County Sheriff's Office argue that they are not suable entities under 42 U.S.C. § 1983.  OCDC Defendants' Dispositive Motion at pp. 14-15.  The Oklahoma County Sheriff's Office is no longer a party.  *See supra* p. 2 n.2.  Thus, the motion is moot with regard to the sheriff's office.  However, the OCDC is entitled to dismissal with prejudice,[5] as it is not a suable entity under Section 1983.[6]

II.    DEFENSE OF QUALIFIED IMMUNITY

In their personal capacities, the Individual OCDC Defendants urge qualified immunity.  In light of the assertion of qualified immunity, the Plaintiff must identify a specific constitutional right and show that it had been "clearly established" before the alleged misconduct.  *See Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).  The Individual OCDC Defendants do not question the "clearly established" nature of the underlying rights.  Instead, the Defendants' argument is premised on Mr. Thornton's inability to establish any constitutional violations.  OCDC Defendants' Dispositive Motion at pp. 2-12, 14-17.

---

[5]     The OCDC contends that it is not a suable entity within a broader argument on qualified immunity.  Qualified immunity is an individual capacity defense and would not apply to the OCDC.  *See Langley v. Adams County*, 987 F.2d 1473, 1477 (10th Cir. 1993) ("Qualified immunity . . . is available only to defendants sued in their individual capacities." (citations omitted)).  Although the OCDC mischaracterized its argument as one for qualified immunity, the underlying contention is correct.

[6]     *See Aston v. Cunningham*, 216 F.3d 1086, 2000 WL 796086, Westlaw op. at 4 n.3 (10th Cir. June 21, 2000) (unpublished op.) ("Dismissal against [the county jail] was . . . required because a detention facility is not a person or legally created entity capable of being sued.").

III.    PERSONAL CAPACITY CLAIMS AGAINST LIEUTENANT HANSEN, CORPORAL WHITENHORN, SDO GURLEY, AND LATISHA PRINCE

Lieutenant Hansen, Corporal Whitenhorn, SDO Gurley, and Latisha Prince seek dismissal on grounds that they had not participated in any of the alleged acts.   OCDC Defendants' Dispositive Motion at p. 15.   The Plaintiff did not respond to this part of the motion to dismiss.

Individual liability under Section 1983 can only be based on personal involvement,[7] which must appear in the complaint.[8]

Mr. Thornton has not alleged participation by Defendants Lieutenant Hansen, Corporal Whitenhorn, SDO Gurley, or Latisha Prince in any of the alleged constitutional violations.   As a result, they are entitled to dismissal without prejudice on all of the personal capacity claims.[9]   Because the defect is potentially curable, however, the dismissal should be without prejudice.   *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).

---

[7]    *See Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997).

[8]    The Tenth Circuit Court of Appeals explained:

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1249-1250 (10th Cir. 2008) (citation omitted).

[9]    *See Miller v. Glanz*, 948 F.2d 1562, 1572 (10th Cir. 1991) (upholding dismissal for failure to state a valid claim when the complaint broadly referred to the defendants' "'acts and statements'" without identification of any "specific act" reflecting participation in the alleged wrongdoing).

IV.   PERSONAL CAPACITY CLAIMS AGAINST LARRY HILL, JACK HERRON, BOBBY CARSON, SCOTT SEDBROOK, CAPTAIN FAULKNER, MICHAEL THOMAS, LIEUTENANT BRADLEY, LIEUTENANT FINLEY, YOGI DOROTEO, SERGEANT GARNER, BRIAN ARRINGTON, CORPORAL RAMSEY, SDO MOORE, STEVEN CHANDLER, AND ELSA CARRION

On the personal capacity claims against the other individuals seeking dismissal or summary judgment, the Court should grant the dispositive motion in part and deny it in part.

A.   Alleged Lack of an "Available" Administrative Remedy

Invoking his rights to due process and to petition for redress of grievances, Mr. Thornton claims that officials had failed to respond to administrative complaints. Amended Complaint at pp. 4-5 (relying on the First, Fifth, and Fourteenth Amendments). The Individual OCDC Defendants correctly argue that the due process theory is invalid because of the absence of a liberty or property interest.

In the absence of interference with court access, alleged errors in the handling of grievances would not implicate the Fourteenth Amendment's Due Process Clause.[10]  Mr. Thornton does not allege that the mishandling of grievances had prevented assertion of the

---

[10]     *See Walters v. Corrections Corporation of America*, 119 Fed. Appx. 190, 191 (10th Cir. Dec. 7, 2004) (unpublished op.) (holding that a prisoner's "alleged denial of access to state administrative grievance procedures" would not have "resulted in a violation of his constitutional rights"); *Rauh v. Ward*, 112 Fed. Appx. 692, 693-94 (10th Cir. Oct. 14, 2004) (unpublished op.) (upholding dismissal of a prisoner's Section 1983 claim involving denial of access to the administrative grievance procedure in light of his access to the courts); *see also Davis v. Oklahoma Department of Corrections*, 2007 WL 869650, Westlaw op. at 1, 11-12 (W.D. Okla. Mar. 20, 2007) (unpublished op.) (holding that hindrance of the ability to exhaust administrative remedies would not implicate a prisoner's due process rights); *accord Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." (citation & footnote omitted)).

current claims.  Consequently, the Plaintiff has failed to state a valid due process theory, and Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion are entitled to dismissal of the claim in their personal capacities based on qualified immunity.  Because the defect is potentially curable, the dismissal should be without prejudice.  *See supra* p. 8 (citing *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)).

The Individual OCDC Defendants do not directly address Mr. Thornton's First Amendment claim regarding the lack of an available remedy.  Instead, they broadly argue that failure to respond to a grievance procedure is not actionable under Section 1983.  This argument goes too far.  Section 1983 exists to remedy violations of the federal constitution, and Mr. Thornton has alleged a violation of the First Amendment.  *See infra* p. 11.  That amendment protects the right to petition the government for redress of grievances.  *See infra* pp. 11-12 n.12.  If the First Amendment was violated, Section 1983 would provide a remedy.

The Defendants rely on 42 U.S.C. § 1997e(b) and *Ouzts v. Cummins*, 825 F.2d 1276, 1278 (8th Cir. 1987) (*per curiam*).  Both authorities are inapplicable to the First Amendment claim.

Section 1997e(b) prevents reliance on 42 U.S.C. § 1997a or 1997c.  *See* 42 U.S.C. § 1997e(b).  But Mr. Thornton has relied on Section 1983, rather than Section 1997a or 1997c of Title 42.

The Defendants cite *Ouzts* as "holding that the procedural failure of prison officials to respond to a grievance is not actionable under § 1983." OCDC Defendants' Dispositive Motion at p. 4. *Ouzts* did not express any such holding. Instead, the court held that the failure to respond to a grievance did not violate the inmate's right to "procedural due process" because of the absence of "a protectible 'liberty' or 'property' interest." *Ouzts v. Cummins*, 825 F.2d 1276, 1278 (8th Cir. 1987) (*per curiam*). This language is unremarkable, as the Tenth Circuit Court of Appeals has frequently stated that a failure to respond to grievances does not create a due process violation. *See supra* p. 9 n.10 (citing cases).

But Mr. Thornton has invoked the First Amendment right to petition for redress of grievances, which is independent of the Fourteenth Amendment Due Process Clause.[11] The Defendants have not presented any argument that would bear on the First Amendment claim. Thus, this portion of Count One should remain against Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion.[12]

---

[11] *See Dickeson v. Quarberg*, 844 F.2d 1435, 1440 (10th Cir. 1988) ("This First Amendment freedom of association claim is distinct from the due process claims and must be considered regardless of whether the plaintiffs had a legitimate expectation of continued employment." (citations omitted)).

[12] The Court need not address the viability of the First Amendment claim in the absence of an argument by the Defendants. Mr. Thornton enjoys a right under the First Amendment to petition administrative authorities for relief. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984) ("Like others, prisoners have the constitutional right to petition the Government for redress of their grievances . . . ." (citation omitted)). Ordinarily, authorities would not violate the First Amendment by failing to respond to a grievance. *See Trentadue v. Integrity Committee*, 501 F.3d 1215, 1237 (10th Cir. 2007) ("the right to petition confers no attendant right to a response from the government" (citation omitted)); *see also Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 465

B.       Alleged Failure to Supply Protection

Invoking the constitutional right to due process and the protection against cruel and unusual punishment, Mr. Thornton alleges that on "court appearance dates" he has faced the "threat of physical injury" by other inmates.  Amended Complaint at p. 4.  According to the Plaintiff, he is in protective custody and on court days he must interact with the general population.  *Id.*  Defendants Sedbrook and Thomas address the claim involving due process,[13] but not the one concerning cruel and unusual punishment.

Substantive Due Process

As a matter of law, the Plaintiff's allegations in the amended complaint would not create liability for deprivation of substantive due process.  Thus, this claim should be dismissed.

_____

(1979) (*per curiam*) ("the First Amendment does not impose any affirmative obligation on the government to listen . . . [or] to respond" (footnote omitted)); *Hornsby v. Jones*, 188 Fed. Appx. 684, 690 (10th Cir. June 26, 2006) (unpublished op.) (holding that an inmate's right to petition for a redress of grievances is not "per se compromised by the prison's refusal to entertain his grievances" (citation omitted)); *accord Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." (citation & footnote omitted)).  But Mr. Thornton appears to suggest that authorities had prevented administrative appeals through the unavailability of forms and delays in service of the responses.  Amended Complaint at p. 5.  And some courts have extended First Amendment protections to include a prisoner's submission of an administrative appeal.  *See Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) ("'[S]everal circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals.'" (citation omitted)).  The Court need not decide whether the Plaintiff's allegation in the amended complaint would implicate a right under the First Amendment to submit an administrative appeal.

[13]      OCDC Defendants' Dispositive Motion at p. 6.

Ordinarily, state actors are not liable for the acts of third parties. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). An exception exists when the State creates a danger that resulted in harm to the plaintiff. *See Rost v. Steamboat Springs Re-2 School District*, 511 F.3d 1114, 1126 (10th Cir. 2008). To fall within this exception, the Plaintiff must satisfy six elements:

> (1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Id*. (citation omitted).

The Defendants advance two arguments: (1) The alleged actions were not shocking to the conscience; and (2) Mr. Thornton was not assaulted. The first argument justifies dismissal without prejudice of the claim involving danger creation. As a result, the Court need not address the second argument, which concerns the availability of compensatory damages.[14]

---

[14]     The Tenth Circuit Court of Appeals has not squarely decided whether a governmental actor can incur liability for "danger creation" in the absence of a third-party's actual assault. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) ("Under the 'danger creation' exception, a state actor may be held liable for the violent acts of a third party if the state actor 'created the danger' that caused the harm.'" (citation omitted)); *see also Barber v. Overton*, 496 F.3d 449, 460 (6th Cir. 2007) (Cook, J., concurring) ("My search for another case where exposure to 'increased risk' sufficed to hold a state actor responsible [under a theory of 'state-created-danger'] produced none." (citation omitted)).

In the amended complaint, Mr. Thornton describes the risks which arose when he was allegedly placed in close proximity to inmates in the "general population."   Amended Complaint at p. 4.  For example, the Plaintiff alleges:

- creation of a "threat of physical injury on court appearance dates" through exposure to other inmates during transportation to and from court and

- an actual assault against an unidentified inmate during transportation of inmates on May 2, 2008.

*Id*. at pp. 4, 6.  The present issue is whether these factual allegations could create a plausible determination that the Defendants' behavior would shock the conscience.  *See supra* p. 6.  The Court should answer in the negative.

Substantive due process was violated only if the Plaintiff can "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  To determine whether governmental action "shocks the conscience," the Court must consider:

> (1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety.

*Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002) (citation omitted).  For this theory, a plaintiff must do more than point to "ordinary negligence"[15] or the "failure to ensure a safe environment."[16]

In the amended complaint, Mr. Thornton has merely used "buzz words" to suggest creation of a risk during transportation to and from the courthouse.   For example, Mr. Thornton has suggested the existence of risks which were "obvious," "serious," "immediate," and "known."  Amended Complaint at pp. 4, 6.  Beyond these labels, however, Mr. Thornton has not identified any facts that would suggest the creation of a risk that was "obvious," "serious," "immediate," or "known."[17]   The only affirmative conduct described in the amended complaint is the transportation  of inmates who were in protective custody with prisoners from the "general population." *Id*. at p. 4.

Mr. Thornton does not question the need to take prisoners in general population and protective custody to and from the courthouse.   Thus, the claim presumably rests on the belief that authorities had failed to ensure a safe environment for Mr. Thornton during these

---

[15]     *See Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002) ("We have noted that ordinary negligence does not shock the conscience." (citation omitted)).

[16]     *See Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) ("The mere 'fail[ure] to take steps to ensure that Renee was placed in a safe environment' is insufficient as a matter of law to result in liability." (citation omitted)).

[17]     *See Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir. 1990) ("Charges that substantive due process was denied cannot rest on conclusory allegations or rhetoric alone (even impassioned rhetoric)."); *see also Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (stating that the court "should dismiss claims which are supported only by vague and conclusory allegations" (citation omitted)).

trips.  But, as indicated above, the failure to ensure a safe environment would not create liability for substantive due process.  *See supra* p. 15.  As a result, the claim is deficient as a matter of law.

In light of the absence of allegations shocking to the conscience, the Court should grant the motion to dismiss on the substantive due process claims asserted in the personal capacities of Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion.  But because the pleading defect is potentially curable, the dismissal should be without prejudice to refiling.  *See supra* p. 8 (citing *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)).

<u>Cruel and Unusual Punishment</u>

In part, the Plaintiff has based the claim on the Eighth Amendment,[18] which prohibits cruel and unusual punishment.[19]  This claim has not been addressed in the Defendants' motion.

C.     <u>Alleged Denial of Access to the Courts</u>

The Plaintiff alleges interference with his right to access the courts through:

- lack of library access,

- lack of research materials,

- limits on the amount of research materials,

---

[18]     Amended Complaint at p. 4.

[19]     U.S. Const. amend. VIII.

16

- lack of photocopies, and

- restrictions on access to court-appointed counsel and attorney correspondence.

Amended Complaint at pp. 6-8.

The Fourteenth Amendment guarantees Mr. Thornton "the right to 'adequate, effective, and meaningful' access to the courts." *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993) (citations omitted).  The Individual OCDC Defendants do not question the existence of this right and assume "*arguendo*, that Plaintiff's claim[s] [are] true."  OCDC Defendants' Dispositive Motion at p. 6.  With this assumption, the Individual OCDC Defendants urge qualified immunity on grounds that Mr. Thornton enjoys full access to his court-appointed counsel.  *Id.* at p. 7.

Even if this access supplied an adequate alternative to the desired items, the defense would entail a question for the fact-finder because Mr. Thornton has alleged impediments to his oral and written communications with counsel.  *See supra* pp. 16-17.  Consequently, the Individual OCDC Defendants are not entitled to dismissal of this claim based on access to court-appointed counsel.

D.    <u>Alleged Deprivation of Property</u>

Mr. Thornton complains that during a cell search, OCDC officials confiscated his pencils, erasers, batteries, and headphones.  Amended Complaint at p. 15.  The Plaintiff also alleges that one of his packages had been "lost or withheld."  *Id.*

<u>Confiscation of Property from the Plaintiff's Cell</u>

On the claim involving confiscation of property from the Plaintiff's cell, the Individual OCDC Defendants seek dismissal on grounds that the taking of property did not impose an atypical or significant hardship. OCDC Defendants' Dispositive Motion at p. 8. They are correct.

A due process violation cannot take place unless a prisoner has been deprived of a constitutionally protected liberty or property interest. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Mr. Thornton does not point to any authority which would create a property interest entitling him to keep the materials in his cell. Liberally construed, the claim in the amended complaint could be read to originate in jail policies. *See* Amended Complaint at p. 15 (arguing that the confiscation failed to comply with "facility policy"). Even with this construction, however, the claim would fail as a matter of law.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that prison policies can create a liberty interest only if they "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484. In the Tenth Circuit, the same test governs the creation of a property interest.[20] And, a restriction on the type and quantity of individual belongings allowed in a

---

[20]    *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("This court has ruled that property interest claims by prisoners are . . . to be reviewed under *Sandin*'s atypical-and-significant-deprivation analysis." (citations & footnote omitted)).

prison cell does not impose an atypical and significant hardship. *See Cosco v. Uphoff*, 195 F.3d 1221, 1222-25 (10th Cir. 1999) (*per curiam*).

Because the alleged confiscation of cell property did not implicate a protected property interest, the personal capacity claims are subject to dismissal for Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion.  The dismissal should be with prejudice because the defect is not curable.  *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (because no amendment could cure the defect, the district court properly dismissed the complaint with prejudice).

<u>Alleged Mishandling of Incoming Mail</u>

Mr. Thornton also alleges loss or withholding of a package, which included supplies needed for legal purposes.  Amended Complaint at p. 15 (describing the contents as stamped envelopes, books and a letter); Plaintiff's Response at p. 4 (referring the Court to another document, which explained that the stamped envelopes were to be used for legal filings).[21] The Individual OCDC Defendants argue that:  (1) the Plaintiff has not alleged "*deliberate[ ]*" loss or withholding of the package; and (2) the claim involves negligence, which is insufficient for civil liability.  OCDC Defendants' Dispositive Motion at p. 9 (emphasis in original).

---

[21]     Mr. Thornton referred to his objections concerning the *Martinez* Report.  *See* Objection to Special Report as Incomplete at p. 18 (Feb. 2, 2009).

To the extent that Mr. Thornton is alleging loss of the package, the Individual OCDC Defendants are correct.  Such a claim could only imply negligence,[22] which would not violate the constitution.[23]  Thus, the Individual OCDC Defendants are entitled to qualified immunity on this claim, requiring dismissal.  The dismissal should be with prejudice because the pleading defect is not curable.  *See supra* p. 19 (citing *Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001)).

The result should be different on the allegation involving "withholding" of the package.  The term "withholding" implies intentional conduct,[24] which would implicate the constitution.[25]  Because the Individual OCDC Defendants do not address the claim involving the intentional withholding of mail, the allegation should survive against Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion.

---

[22]    *See Jackson v. Steinberg*, 200 P.2d 376, 377 (Ore. 1948) ("Lost property is defined as that with the possession of which the owner has involuntarily parted, through neglect, carelessness, or inadvertence." (citation omitted)); *Corliss v. Wenner*, 34 P.3d 1100, 1104 (Idaho Ct. App. 2001) (defining "Lost Property" as "that property which the owner has involuntarily and unintentionally parted with through neglect, carelessness, or inadvertence" (citation omitted)).

[23]    *See Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (stating in dicta that "when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs" (citation omitted)).

[24]    *See New Oxford American Dictionary* 1938 (ed. Elizabeth Jewell & Frank Abate 2001) (defining "withhold" as "refuse to give (something that is due to or is desired by another)").

[25]    *See Simkins v. Bruce*, 406 F.3d 1239, 1242-43 (10th Cir. 2005) (stating that intentional interference with mail could result in violation of the constitutional entitlement to court access).

The Plaintiff's Allegations Concerning a Cell Transfer and Styrofoam Cups

Mr. Thornton has alleged constitutional violations from his cell transfer and lack of styrofoam cups.  Amended Complaint at pp. 10, 12.  For these allegations, the Individual OCDC Defendants assert qualified immunity based on the absence of a property interest.  OCDC Defendants' Dispositive Motion at p. 9.  This argument is irrelevant.  Mr. Thornton did not allege a property interest in his cell placement or lack of styrofoam cups.  Instead, the Plaintiff has alleged cruel and unusual punishment from his cell transfer and lack of cups, characterizing them as unconstitutional conditions of confinement.  *See* Amended Complaint at pp. 9-12.  The movants do not address this theory and Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion are not entitled to dismissal or summary judgment on these claims.

E.     Alleged Use of Excessive Force

The Plaintiff alleges excessive force during the search of his cell, stating that after he was handcuffed, his feet were kicked and he was forced to the ground.  *Id.* at p. 16.  According to the Plaintiff, he "suffered a bruised ankle and a ripped back thumb nail."  *Id.* On this claim, the Court should overrule the dispositive motion.[26]

Generally, the Eighth Amendment prevents "'the unnecessary and wanton infliction of pain . . . .'"  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation omitted).  In excessive

---

[26]     Defendant Chandler seeks dismissal of this claim in his individual capacity based on a lack of personal participation.  OCDC Defendants' Dispositive Motion at p. 12.  But Mr. Chandler has read the amended complaint too broadly.  On the excessive force claim, Mr. Thornton has not alleged liability on the part of Mr. Chandler.  *See* Amended Complaint at p. 16.

force cases, constitutionality "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Id.* at 6 (citation omitted).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  *Id.* at 9 (citation omitted).

The Individual OCDC Defendants seeks summary judgment on two grounds.  First, they allege that Mr. Thornton had refused an order, and "[i]n the face of the Plaintiff's reticence, Sgt. Arrington's action was necessary to enforce the order . . . ."  OCDC Defendants' Dispositive Motion at pp. 11-12.  Second, the Individual OCDC Defendants contend that Mr. Thornton's alleged injuries "are clearly minor in character."  *Id.* at p. 12.  Both defenses should be rejected for purposes of summary judgment.

One defense theory rests on Mr. Thornton's alleged failure to follow an order and Officer Arrington's need to impose force to enforce the instruction.  *See supra* p. 22; OCDC Defendants' Dispositive Motion at pp. 11-12, Exh. 9 at pp. 1-2.[27]  But the Defendants' evidence does not justify summary judgment.

According to Officer Arrington's statement, the Plaintiff disobeyed an order to "step away from the doorway [of the cell]."  *Id.*, Exh. 9 at p. 2 (stating that "SDO Chandler instructed Thornton to step away from the doorway" and that "Thornton refused").  However,

---

[27]     Officer Arrington made his statements in an incident report, and he swore that the information was true.  *See* OCDC Defendants' Dispositive Motion, Exh. 9 at pp. 1-2.

Mr. Thornton does not allege any force during his removal from the doorway. *See* Amended Complaint at p. 16.

Mr. Thornton states that he was subjected to force only after he had been removed from the cell, handcuffed, and placed against the wall. *See supra* p. 21. At that time, Officer Arrington allegedly kicked the Plaintiff's feet from under him. *See* Amended Complaint at p. 16. Officer Arrington states that Mr. Thornton was not disobeying an order at that time. *See* OCDC Defendants' Dispositive Motion, Exh. 9 at p. 2 (stating that when told to sit or kneel, Mr. "Thornton . . . went to both knees and stayed there until SDO Chandler completed the cell [s]earch"). Read in a light favorable to Mr. Thornton, the fact-finder could conclude that Officer Arrington had used force when none was needed.

The second defense theory is that Mr. Thornton had suffered only a minor injury. *See supra* p. 22. This argument is also unavailing. As stated above, the Supreme Court has held: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *See supra* p. 22 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). The Supreme Court added: "This is true whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (citation omitted). Thus, even if the Court were to label a bruised ankle and torn thumb nail as "minor," the Individual OCDC Defendants would not be entitled to summary judgment on the claim.

F.    Alleged Deprivation of Religious Texts

Mr. Thornton alleges violation of his constitutional rights through confiscation of religious materials.  Amended Complaint at p. 16.  According to the Plaintiff, prison officials confiscated:

- a TNIV study bible,

- a King James bible, and

- "bible studies and assorted Christian literature."

*Id.*

Relying on evidence outside of the amended complaint, the Individual OCDC Defendants insist that "no religious material was among the material confiscated."  OCDC Defendants' Dispositive Motion at p. 13 (relying on Exh. 11).

The conflicting evidence creates a classic factual dispute about the confiscation of Mr. Thornton's materials.  And "[u]nder the free exercise clause of the first amendment, an inmate must be accorded a reasonable opportunity to pursue his religion."  *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991) (citation omitted).  Consequently, the Individual OCDC Defendants are not entitled to summary judgment on this theory.

Alternatively, the Individual OCDC Defendants suggest that even if the materials had been religious, the confiscation took place only because the texts had exceeded the volume of authorized material in the Plaintiff's cell.  OCDC Defendants' Dispositive Motion at p. 13.  This suggestion would not justify summary judgment.

A prisoner's right to exercise religious freedom may be limited if the restriction is "reasonably related to legitimate penological interests." *Makin v. Colorado Department of Corrections*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citations omitted). The Individual OCDC Defendants suggest that the requirement for a limited amount of materials in a prisoner's cell is reasonably related to a legitimate penological interest because the "limitation serves to prevent fire hazards and to prevent inmates from concealing contraband." OCDC Defendants' Dispositive Motion at p. 13. But the Defendants have cited no exhibit to support their statement. *See id.*; *see also* W.D. Okla. Local Civil Rule 7.1(j).[28] Thus, the Court lacks any evidence that the removal of Mr. Thornton's religious materials was reasonably related to a legitimate penological interest.

SCREENING ON THE PERSONAL
CAPACITY CLAIMS INVOLVING
CONDITIONS OF CONFINEMENT

Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley Doroteo, Garner, Arrington, Ramsey, Moore, Chandler, and Carrion have not addressed the Plaintiff's claim involving improper conditions of confinement with respect to recreation, shortages of cleaning supplies, mold in the showers, inadequacy in the diet, lack of fresh air, lack of sight checks, lack of operable medical emergency buttons, insufficiency in hygienic

---

[28]     This rule provides: "Factual statements . . . appearing only in briefs shall not be deemed to be a part of the record in the case, unless specifically permitted by the Court." W.D. Okla. Local Civil Rule 7.1(j).

supplies, insufficiency in changes of clothing, disparagement by officers, and excessive expense in commissary items.

The movants have apparently assumed that the claim did not relate to them because this portion of the amended complaint did not identify any of the defendants. The assumption is misguided. Obviously, the Plaintiff intended to assert the claims against one or more of the defendants even though they were not identified in the body of Count Four. Liberally construed, Count Four appears to be directed against all of the movants. *See Sheridan v. United States*, 214 Fed. Appx. 857 (10th Cir. Jan. 31, 2007) (unpublished op.).[29]

As discussed above, the plaintiff must allege facts suggesting personal participation for a defendant to incur individual liability. *See supra* p. 8. Although the Plaintiff complains of his conditions of confinement, he has not identified any facts that would suggest participation by Sergeant Hill, Major Herron, Captain Carson, Captain Sedbrook, Captain Faulkner, Lieutenant Thomas, Lieutenant Bradley, Lieutenant Finley, Sergeant Doroteo, Sergeant Garner, Sergeant Arrington, Corporal Ramsey, SDO Moore, Steven Chandler, or Elsa Carrion. As a result, the Court should dismiss the personal capacity claims against these

---

[29]     In *Sheridan v. United States*, the United States was the only defendant identified in the caption of the complaint. *See Sheridan v. United States*, 214 Fed. Appx. at 858. Thus, the district court treated the United States as the sole defendant. *See id.* The Tenth Circuit Court of Appeals regarded this treatment as erroneous. *Id.* at 859-60. The court concluded that the plaintiff's narrative in the complaint reflected an apparent intent to assert liability on the part of the state and county officials. *Id.* Thus, the appeals court regarded these officials as additional defendants. *Id.*

individuals.[30]   However, the dismissal should be without prejudice in light of the curable nature of the pleading defect.  *See supra* p. 8 (citing *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)).

<u>SUMMARY OF RECOMMENDATIONS</u>

OCDC is entitled to dismissal with prejudice, as it is not a suable entity.  The Court should grant the motion to dismiss on the individual capacity claims against Lieutenant Hansen, Corporal Whitenhorn, SDO Gurley, and Latisha Prince.  These parties lack personal participation, requiring dismissal without prejudice on the individual capacity claims.

For the other movants, the Court should grant:

- dismissal without prejudice on the personal capacity claims for deprivation of due process based on inadequate consideration of grievances;

- dismissal without prejudice on the personal capacity claims for deprivation of due process based on a failure to supply protection;

- dismissal with prejudice of the personal capacity claims for deprivation of personal property through the confiscation of pencils, erasers, headphones and batteries; and

- dismissal with prejudice of the personal capacity claims involving loss of the Plaintiff's package.

The Court should reject the argument for dismissal or summary judgment by Defendants Hill, Herron, Carson, Sedbrook, Faulkner, Thomas, Bradley, Finley, Doroteo,

---

[30]      *See*, *e.g.*, *Esnault v. Suthers*, 24 Fed. Appx. 854, 855-56 (10th Cir. Oct. 24, 2001) (unpublished op.) (upholding summary dismissal based on the failure to show in the complaint how each defendant had participated in the alleged constitutional violation).

Garner, Arrington, Ramsey, Moore, Chandler, and Carrion on the individual capacity claims concerning:

- denial of access to the courts through lack of library access, lack of research materials, limits on the amount of research materials, lack of photocopies, and restrictions on access to court-appointed counsel and attorney correspondence;

- deprivation of personal property through the withholding of the Plaintiff's package;

- deprivation of religious materials;

- improper cell transfer;

- lack of cups; and

- excessive force.

The argument for dismissal by the Oklahoma County Sheriff's Office is moot and should be denied on this basis.

On screening, the Court should dismiss without prejudice the personal capacity claims involving inadequate recreation, lack of cleaning supplies, moldy showers, inadequate diet, lack of fresh air, lack of sight checks, inoperable medical emergency buttons, insufficient hygiene supplies, insufficient changes of clothing, disparaging remarks, and excessive prices on commissary items by Sergeant Hill, Major Herron, Captain Carson, Captain Sedbrook, Captain Faulkner, Lieutenant Thomas, Lieutenant Bradley, Lieutenant Finley, Yogi Doroteo, Sergeant Garner, Brian Arrington, Corporal Ramsey, SDO Moore, Steven Chandler, and Elsa Carrion.

The Individual OCDC Defendants did not address Mr. Thornton's official capacity claims or the personal capacity claims against Sergeant Hill, Major Herron, Captain Carson, Captain Sedbrook, Captain Faulkner, Lieutenant Thomas, Lieutenant Bradley, Lieutenant Finley, Sergeant Doroteo, Sergeant Garner, Sergeant Arrington, Corporal Ramsey, SDO Moore, DO Chandler, and Elsa Carrion for violation of the First Amendment, cruel and unusual punishment in the failure to provide adequate protection, and deprivation of due process in the disciplinary process. Because these claims should survive screening, they would remain upon adoption of the report.

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to the present report and recommendation. Any such objection must be filed with the Clerk of this Court by June 17, 2009. *See* W.D. Okla. Local Civil Rule 72.1. The failure to timely object would foreclose appellate review of the suggested rulings.[31]

## STATUS OF THE REFERRAL

The referral is not terminated.

Entered this 27th day of May, 2009.

Robert E. Bacharach
United States Magistrate Judge

---

[31]     *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").