IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SCOTT M. THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-08-575-D |
| | ) | |
| LARRY HILL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

Mr. Scott Thornton is a pretrial detainee at the Oklahoma County Detention Center ("OCDC"). Invoking 42 U.S.C. § 1983, the Plaintiff has sued Correctional Healthcare Management, Inc. ("CHM") for:

- deprivation of due process and the right to petition for redress of grievances through the failure to respond to administrative complaints and denial of forms, and

- inadequate medical treatment of a serious wrist injury, abdominal/chest pain, and a chronic cough.

Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at pp. 4-5, 13-14 (Oct. 15, 2008) ("Amended Complaint"). Defendant CHM has moved for summary judgment, and the Court should grant the motion in part and deny it in part.

Mr. Thornton's medical claim involving his wrist injury should survive the Defendant's motion. However, the Court should grant summary judgment to CHM on the claims concerning:

- deprivation of due process and the right to petition for redress of grievances through the failure to respond to administrative complaints and denial of forms, and

- inadequate medical treatment for abdominal/chest pain and a chronic cough.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When a summary judgment motion is filed, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

The burden of persuasion falls on the Plaintiff for the elements of a *prima facie* case. *See Doe v. Bagan*, 41 F.3d 571, 573 (10th Cir. 1994) (stating that the plaintiffs bear the burden of proof on the essential elements of their case on a claim involving Section 1983). Because CHM does not bear the burden of persuasion, it need only produce affirmative evidence negating an essential element of the Plaintiff's claims or show that he lacks evidence to carry his burden of persuasion. *See id.* Once the Defendant satisfies its burden of production, the Plaintiff can only avoid summary judgment if he presents evidence creating "an inference of the existence of each element essential to the case with respect to which [he] has the burden of proof." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (citations omitted).

## ALLEGED VIOLATION OF THE RIGHTS TO DUE PROCESS AND TO PETITION FOR REDRESS OF GRIEVANCES

Invoking his rights to due process and to petition for redress of grievances, Mr. Thornton claims that "[t]he system for instituting and pursuing a grievance within O.C.D.C. is broken." Amended Complaint at p. 4. In particular, the Plaintiff alleges that "grievances have been disregarded, and probably discarded" or "delayed." *Id.* at pp. 4-5. Without explanation, Mr. Thornton alleges involvement by CHM in the alleged constitutional violations. *See id.* at p. 5.

Defendant CHM seeks summary judgment on grounds that "[the] Plaintiff has shown absolutely no evidence that Defendant CHM had any control or influence over internal jail procedures as it is an outside, private company." Defendant Correctional Healthcare Management, Inc.'s Motion for Summary Judgment at p. 3 (Feb. 27, 2009) ("Defendant's Motion for Summary Judgment").

Under Section 1983, liability cannot be imposed "vicariously on a theory of respondeat superior."[1] Thus, CHM would incur liability under Section 1983 only if the harm had resulted from a policy or custom on the part of the corporation.[2]

---

[1] *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006); *see also Smedley v. Corrections Corp. of America*, 175 Fed. Appx. 943, 946 (10th Cir. Dec. 20, 2005) (unpublished op.) ("[A] private actor such as CCA 'cannot be held liable solely because it employs a tortfeasor-or, in other words . . . cannot be held liable under § 1983 on a respondeat superior theory.'" (citation omitted)).

[2] *See Smedley v. Corrections Corp. of America*, 175 Fed. Appx. 943, 946 (10th Cir. Dec. 20, 2005) (unpublished op.) ("in order to hold CCA liable for the alleged tortious acts of its agents, [the plaintiff] must show that CCA directly caused the constitutional violation by instituting an 'official municipal policy of some nature,' that was the 'direct cause' or 'moving force' behind the constitutional violations" (citations omitted)); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194,

Because CHM has challenged the Plaintiff's evidence to carry his burden of persuasion, Mr. Thornton can only avoid summary judgment through evidence creating an inference of a wrongful policy or custom on CHM's part. *See supra* p. 2. Mr. Thornton failed to present such evidence in his response. *See* Answer to Motion for Summary Judgment, *passim* (Apr. 14, 2009) ("Plaintiff's Response"). Consequently, the Court should grant CHM's motion for summary judgment on the claims involving deprivation of due process and the right to petition for redress of grievances.

ALLEGED FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

Mr. Thornton also accuses CHM of inadequate medical treatment for a wrist injury, abdominal/chest pain, and a chronic cough. Amended Complaint at pp. 13-15. On the claim concerning Mr. Thornton's wrist, CHM's motion for summary judgment should be denied. But the motion should be granted on the issues involving medical care for abdominal/chest pain and coughing.

I.	Standard for a Constitutional Violation

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).[3] As a result,

---

1216 (10th Cir. 2003) (noting that even though the Supreme Court's requirement of a wrongful policy in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) applied to municipalities rather than private entities, "caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants" (citations omitted)).

[3]	Because Mr. Thornton was a pretrial detainee during the relevant time period, his claims are governed by the Fourteenth Amendment's Due Process Clause. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). But the scope of the constitutional protection is the same under either the Eighth Amendment or the Fourteenth Amendment's Due Process Clause. *See id.*

deliberate indifference to a prisoner's serious injury is actionable under Section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A prison official violates the Eighth Amendment when the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834.

II.     Alleged Wrist Injury

In the amended complaint, Mr. Thornton states under oath[4] that he injured his wrist in December 2007 and:

- the injury was "evident,"
- he had "intense pain," and
- he was unable to obtain a splint or medication.

Amended Complaint at pp. 13, 21.

The Defendant's sole argument is that its treatment for the injury was sufficient because the Plaintiff had denied an injury on December 24, 2007, and had no fracture a few weeks later. In making this argument, CHM relies solely on two documents: (1) an unsigned, unauthenticated medical document that contains handwritten notes reflecting

---

[4]     For purposes of summary judgment, the verified amended complaint is treated as an affidavit. *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (*per curiam*).

clearance of Mr. Thornton "for segregation" and his denial of "pain or injury;"[5] and (2) an x-ray reflecting the absence of a fracture three weeks after the altercation.[6]

The evidence is sparse on both sides, requiring the Court to determine whether a genuine issue of material fact is present based on the Plaintiff's sworn statement and the two documents relied upon by CHM.

The medical record on December 24, 2007, provides the Defendant's sole evidence regarding the Plaintiff's denial of any pain. This document constitutes improper summary judgment evidence because it was not authenticated as required under Federal Rule of Civil Procedure 56(e)(1).

Federal Rule of Civil Procedure 56(c) requires entry of summary judgment if the pleadings, discovery, disclosure materials, and affidavits show the absence of a genuine issue of material fact. In turn, Rule 56(e)(1) provides:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

Fed. R. Civ. P. 56(e)(1).

The Plaintiff stated that the document had "misrepresented" the actual events. Plaintiff's Response at p. 8. But the Plaintiff's statement was not made under oath and does

---

[5] Defendant's Motion for Summary Judgment, Exh. A (pt. 2) at p. 5.

[6] Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at pp. 8-9.

not constitute part of the summary judgment record.[7] Even though the Plaintiff's unverified statement does not constitute "evidence," it does implicate the authenticity of the medical record submitted with CHM's motion.

In similar circumstances, Judge DeGiusti held that the Court could not consider logs submitted by jail authorities in connection with a summary judgment motion:

> Defendants are correct that Rule 56 authorizes papers other than affidavits to be used for summary judgment purposes. However, Judge Couch properly noted that the Inmate Notes were submitted without explanation or authentication, and were simply an unverified copy of an unidentified record. Rule 56(e) requires that when papers other than affidavits are submitted, "a sworn or certified copy must be attached to or served with the affidavit."[8]

Without the medical record of December 24, 2007, the Court is left with:

- a statement by the Plaintiff, under oath, that his pain on December 24, 2007, was "intense" and "obvious," and

- an x-ray which showed the absence of a fracture three weeks later.

---

[7] *See Sparks v. Rittenhouse*, __ Fed. Appx. __, 2008 WL 4218800, Westlaw op. at 5 n.2 (10th Cir. Sept. 16, 2008) (unpublished op.) (stating that a prisoner's unsworn response to a summary judgment motion was not the equivalent of an affidavit because "[u]nsworn statements do not meet the evidentiary requirements of Fed.R.Civ.P. 56" (citation omitted)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) (stating that an unsworn statement "does not meet the requirements of Fed.Rule Civ.Proc. 56(e)"); *cf.* W.D. Okla. Local Civil Rule 7.1(j) ("Factual statements or documents appearing only in briefs shall not be deemed to be a part of the record in the case, unless specifically permitted by the Court.").

[8] *Woodson v. Oklahoma State Department of Health*, 2008 WL 4365051, Westlaw op. at 2 (W.D. Okla. Sept. 17, 2008) (unpublished op.) (citations & footnote omitted), *vacated in part on other grounds*, *Woodson v. Oklahoma State Department of Health*, 2009 WL 1444525 (W.D. Okla. May 20, 2009) (unpublished op.).

For purposes of summary judgment, the issue is whether the evidence - read in the light most favorable to the Plaintiff - could justify a finding of deliberate indifference and sufficient seriousness of the pain. *See supra* pp. 2, 4-5.

The Defendant's only admissible evidence on these issues is the record of the Plaintiff's x-ray on January 14, 2008. This document does reflect the absence of a fracture, as CHM states. But the document also reflects that the x-ray had been taken because of "pain in hand," along with "slight soft tissue swelling" three weeks after the altercation. Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at pp. 8-9.

This document could lead the trier of fact to conclude that the Plaintiff's allegation of pain was overstated. But, an opposite conclusion would also be permissible. Surely the absence of a fracture three weeks later does not preclude the possibility of intense pain[9] and the apparent need for officials to alleviate the condition.[10]

Construed in a light most favorable to the Plaintiff, the evidence could lead a reasonable fact-finder to believe that CHM was deliberately indifferent to Mr. Thornton's pain. Consequently, summary judgment should be denied on this ground.

---

[9]     *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("We have held that the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." (citation omitted)); *see also Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) ("The 'substantial harm' can also be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." (citation omitted)).

[10]    *See Hemmings v. Gorczyk*, 134 F.3d 104, 106-107, 109 (2d Cir. 1998) (*per curiam*) (reversing dismissal of a claim involving deliberate indifference to medical needs when an inmate plaintiff had alleged pain and swelling in his ankle notwithstanding the absence of a fracture).

III.   Abdominal/Chest Pain

Mr. Thornton also complains about the lack of treatment for his abdominal/chest pain. Amended Complaint at pp. 13-14. According to the Plaintiff, he was merely given an "anti-acid" and denied a gallbladder test. *Id.* at pp. 13-14. Mr. Thornton adds that "[n]o referral was made to the doctor" and "nothing has been medically diagnosed or treated." *Id.* Defendant CHM does not dispute the presence of abdominal/chest pain, but provides evidence of multiple examinations and extensive treatment for the condition.[11] Even when this evidence is viewed in a light most favorable to Mr. Thornton, no genuine issue of material fact would exist on the element of deliberate indifference.

The Plaintiff returned to the OCDC on October 11, 2007.[12] Within three weeks, Mr. Thornton complained of heartburn,[13] and officials began periodic supplies of Zantac.[14] Within a week of the heartburn complaint, Mr. Thornton was examined. Defendant's Motion

---

[11]   The Plaintiff does not dispute the authenticity of any of the medical records discussed in the text with respect to the treatment for abdominal/chest pain or coughing. Consequently, Mr. Thornton has waived any authenticity objection to these documents. *See Noblett v. General Electric Credit Corporation*, 400 F.2d 442, 445 (10th Cir. 1968) ("An affidavit that does not measure up to the standards of 56(e) is subject to a motion to strike; and formal defects are waived in the absence of a motion or other objection." (citations omitted)).

[12]   Mr. Thornton was housed at the OCDC from November 27, 2006, to July 10, 2007. *See* Plaintiff's Response at p. 2. He returned to the OCDC on October 11, 2007. *See id.*

[13]   Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at p. 27.

[14]   Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at pp. 27, 38; Defendant's Motion for Summary Judgment, Exh. A (pt. 2) at pp. 20, 22, 30-38. These supplies were continued until after initiation of this suit. *See* Defendant's Motion for Summary Judgment, Exh. A (pt. 2) at pp. 36, 38.

for Summary Judgment, Exh. A (pt. 2) at p. 6. At the examination, Mr. Thornton said that he had experienced similar pain in the past and obtained diagnoses of gastroesophageal reflux disease ("GERD") and heartburn. *Id.*[15]

And Mr. Thornton acknowledges the taking of an "E.K.G.," which produced "negative" results. Amended Complaint at p. 13.[16]

The Plaintiff alleges that: (1) the treatment was deficient; and (2) he was seen by nurses rather than doctors. *See supra* p. 9. Both arguments are invalid as a matter of law.

In challenging the treatment, Mr. Thornton says that staff never gave him a medical diagnosis, merely gave him an "anti-acid," and refused to provide a gallbladder test. Amended Complaint at pp. 13-14; *see supra* p. 9. But liability under Section 1983 cannot be based solely on disagreement regarding treatment between a prisoner and officials. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("a difference of opinion does not support a claim of cruel and unusual punishment" (citation omitted)). The undisputed medical record reflects diagnosis of Mr. Thornton's abdominal/chest pain as GERD and heartburn, and he received medication to alleviate his symptoms. Under these circumstances, the trier of fact

---

[15] The Plaintiff subsequently said in an unsworn brief that the history was "inaccurate." Plaintiff's Response at p. 3. This statement does not constitute "evidence" for purposes of the summary judgment motion. *See supra* pp. 6-7; *infra* p. 15. And, Mr. Thornton does not dispute the authenticity of the medical record submitted by the Defendant. *See supra* note 11.

[16] In addressing the Plaintiff's abdominal/chest pain issue, CHM suggests that liver tests were also ordered. *See* Defendant's Motion for Summary Judgment at p. 9. But those tests were apparently used to track the effect of the prescriptions for "INH" and vitamin B6. *See* Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at p. 34. These medications had been supplied for the treatment of Mr. Thornton's cough. *See infra* pp. 12-13.

could not find deliberate indifference even with a wholly one-sided view of the evidence involving chest pain.

Second the Plaintiff seems to argue that he was entitled to treatment by the facility physician rather than the nurse. *See supra* p. 9 (referring to the Plaintiff's allegation about the failure to refer the matter to a doctor). This argument is legally invalid.

Mr. Thornton is entitled to adequate medical care,[17] but the federal constitution does not require the use of a physician rather than a nurse.

A similar issue arose in *Boyett v. County of Washington*, 282 Fed. Appx. 667 (10th Cir. June 19, 2008) (unpublished op.), *cert. denied*, __ U.S. __, 129 S. Ct. 647 (2008). There an inmate died while in prison, and his survivors sued under Section 1983 for deliberate indifference from a failure to provide treatment by a doctor. *See Boyett v. County of Washington*, 282 Fed. Appx. at 669, 673-74. The federal district court granted summary judgment to the defendants, and the Tenth Circuit Court of Appeals affirmed. *Id.*, 282 Fed. Appx. at 669. In affirming, the appeals court explained that prisons can generally provide medical care through nurses rather than doctors:

> As a preliminary matter, there is no *per se* requirement that a jail provide its inmates around-the-clock access to a medical doctor. While jailers are ultimately responsible for their inmates' medical needs, they can provide that care in a variety of ways, including access to trained personnel such as guards in the first instance, nurses, and physicians' assistants. . . . While access to a

---

[17]  *See Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("The Eighth Amendment prohibits the government from incarcerating prisoners without providing adequate medical care." (citation omitted)).

> medical doctor may be necessary in certain situations, no constitutional violation occurs unless medical care is intentionally or recklessly denied.

*Id.*, 282 Fed. Appx. at 673-74 (citations omitted). Applying this standard, the appeals court concluded as a matter of law that the provision of medical care through nurses, a physician's assistant, and a social worker precluded a finding of deliberate indifference notwithstanding the absence of treatment by a doctor. *Id.*, 282 Fed. Appx. at 674.

*Boyett v. County of Washington* is persuasive in light of the similarity in facts and the applicability of its reasoning. *See* Tenth Cir. R. 32.1(A). Mr. Thornton admittedly received treatment from a nurse, and the Plaintiff has not presented evidence of deliberate indifference through the alleged failure to involve a medical doctor.

Under either of Mr. Thornton's theories, CHM is entitled to summary judgment on the claim concerning deficiencies in the treatment of abdominal/chest pain.

IV.     Chronic Cough

The same is true on Mr. Thornton's claim concerning the treatment of his cough.

The Plaintiff explains that he has a "chronic cough" and admits to "frequent visits to sick-call, medical and the doctor." Amended Complaint at p. 14. Nevertheless, Mr. Thornton believes that he has received inadequate examinations and the wrong medication. *See id.*

The evidence precludes a finding of deliberate indifference to the coughing complaints. For example, when Mr. Thornton arrived at OCDC in October 2007, authorities noted a prior diagnosis of tuberculosis while at another facility. *See* Defendant's Motion for

Summary Judgment, Exh. A (pt. 1) at pp. 2-3. The Plaintiff was taking "INH"[18] and vitamin B6 twice a week for the condition. *See id.*, Exh. A (pt. 1) at pp. 2-3; Defendant's Motion for Summary Judgment, Exh. A (pt. 2) at p. 7. An OCDC physician ordered continuation of these medications and scheduled monthly liver tests during the course of treatment. *See* Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at p. 34; Defendant's Motion for Summary Judgment, Exh. A (pt. 2) at pp. 7-8, 19, 21-31; *see also supra* note 16.

Thereafter, Mr. Thornton complained about "severe coughing" on July 14, 2008. *See* Defendant's Motion for Summary Judgment, Exh. A (pt.1) at p. 30. A medical professional examined Mr. Thornton four days later and reported a cough, nasal congestion, a sore throat, and a headache. Defendant's Motion for Summary Judgment, Exh. A (pt. 2) at p. 4. The Plaintiff was prescribed "CTM 4mg,"[19] "Extra-Strength Tylenol," and Guaifenesin.[20] *See id.* at p. 4.

---

[18] "INH" is an antibiotic used to treat tuberculosis. *See Wiens v. Zeavin*, 2008 WL 199891, Westlaw op. at 1, 4 (W.D. Okla. Jan. 22, 2008) (unpublished op.), *aff'd*, 280 Fed. Appx. 722 (10th Cir. May 30, 2008) (unpublished op.).

[19] "CTM," or Chlor-Trimeton, is a decongestant. *See Handbook of Nonprescription Drugs* 674 (10th ed. 1993).

[20] "Guaifenesin" acts as an expectorant to create a more productive cough. *See Handbook of Nonprescription Drugs* 104-105 (10th ed. 1993).

On August 6, 2008, Mr. Thornton was again examined for "extreme coughing fits." *See id.* at p. 2. At this examination the Plaintiff was injected with "Depo-Medrol"[21] and treated with an "albuterol nebulizer."[22] Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at p. 28; Defendant's Motion for Summary Judgment, Exh. A (pt. 2) at p. 2.

On August 15, 2008, Mr. Thornton complained that his coughing was worse. Defendant's Motion for Summary Judgment, Exh. A (pt. 1) at p. 29. Another albuterol treatment was ordered. *See id.* at pp. 29-30.

On August 27, 2008, medical personnel ordered a "chest x-ray for [tuberculosis]." *See id.* at p. 32. That x-ray, taken on September 3, 2008, revealed "possible mild hyperinflation, without tuberculosis." *Id.* at pp. 15-17.

On September 2, 2008, Mr. Thornton was prescribed Guaifenesin, "CTM," and "Q-VAR."[23] *Id.* at p. 32. The Plaintiff then obtained nebulizer treatments approximately a week later. *Id.* at p. 19. On September 11, 2008, officials authorized Mr. Thornton to keep an albuterol inhaler and extra blanket in his cell and prescribed "Cipro"[24] for bronchitis. *Id.* at p. 31.

---

[21]   "Depo-Medrol" is an anti-inflammatory drug and is indicated in some respiratory diseases. *Physicians Desk Reference* 2617-18 (61st ed. 2007).

[22]   "Albuterol" is used for the prevention and relief of bronchial spasms. *See Physicians Desk Reference* 3053 (61st ed. 2007) (referring to albuterol's brand name, "Proventil").

[23]   "QVAR" is an anti-inflammatory cortisteroid. *Physicians Desk Reference* 3303 (61st ed. 2007).

[24]   "Cipro" is an antibiotic used to treat bacterial infections. *Physicians Desk Reference* 2977-78 (61st ed. 2007).

In his response brief, the Plaintiff asserts:

- falsification of the medical record relating to breathing treatments on August 19, 2008, and August 31, 2008;

- lack of evidentiary support to prove voluntary refusal of treatment on September 1, 8, and 11, 2008; and

- denial of the medication prescribed on September 2, 2008.

Plaintiff's Response at p. 7.

On the first two arguments, the Court can consider the Plaintiff's objections as challenges to authenticity[25] and may assume *arguendo* that the evidence cannot be considered for purposes of summary judgment.[26] Mr. Thornton did not make his third argument under oath. As a result, the Court cannot consider this argument as evidence for purposes of the summary judgment motion. *See supra* pp. 6-7 & note 7.

Mr. Thornton alleges that for approximately four months prior to the litigation, he had been denied proper medical treatment for his chronic cough. Amended Complaint at p. 14. But based on the summary judgment evidence, the fact-finder could not reasonably conclude that CHM was deliberately indifferent to Mr. Thornton's illness. Authorities repeatedly examined and tested Mr. Thornton and gave him medication for his cough. As a result, the Court should grant CHM's motion for summary judgment on this ground.

---

[25] *See supra* pp. 6-7.

[26] *See supra* pp. 6-7.

V.  Other Medical Claims Added in the Plaintiff's Response Brief

In the amended complaint, Mr. Thornton was specific about his medical claims. For example, he said: "During Plaintiff's incarceration at O.C.D.C., three medical problems have arisen, for which Plaintiff sought diagnosis and/or treatment." *Id.* at p. 13. Then, in three separate paragraphs, he explained the allegations involving the medical treatment for his right hand, chest pain, and coughing. *Id.* at pp. 13-14.

In a response brief, Mr. Thornton states that he has "newly discovered facts" and purports to add medical claims involving disruption in his supply of tuberculosis medication, denial of medication for bipolar disorder, and denial of dental care. Plaintiff's Response at pp. 2, 9-12. Liberally construed, the Court could construe the new allegations as a motion to amend or supplement the complaint. *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). But such treatment could disadvantage Mr. Thornton. The report would leave a medical claim against CHM, and the Court is seeking legal representation for Mr. Thornton. *See* 28 U.S.C. § 1915(e)(1). If counsel is located for Mr. Thornton, the attorney would have an opportunity to seek leave of court for further amendment of the complaint. Construction of the response brief as a motion to amend could preclude further opportunities by Mr. Thornton to seek amendment once he has obtained an attorney.

## SUMMARY OF RECOMMENDATIONS

Defendant CHM is entitled to summary judgment on the Plaintiff's claims concerning:

- deprivation of due process and the right to petition for redress of grievances through the failure to respond to administrative complaints and denial of forms, and

- inadequate medical treatment for abdominal/chest pain and a chronic cough.

But the summary judgment motion should be denied on the claim involving medical care for a wrist injury.

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to the present report and recommendation. Any such objection must be filed with the Clerk of this Court by July 8, 2009. *See* W.D. Okla. Local Civil Rule 72.1. The failure to timely object would foreclose appellate review of the suggested rulings.[27]

## STATUS OF THE REFERRAL

The referral is not terminated.

Entered this 17th day of June, 2009.

*Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge

---

[27] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").